**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

|  |  |  |
|---|---|---|
| CHANTE' N. HODGE, *et al.*,<br>Plaintiffs,<br><br>v.<br><br>LT. RANDY L. STEPHENS, *et al.*<br>Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | Civil Action No. 12-cv-01988-AW |

**************************************************************************

## MEMORANDUM OPINION

Pending before the Court are two Motions to Dismiss or, in the Alternative, for Summary Judgment.  The first Motion is by Defendants Calvert County, Calvert County Sheriff's Office, Sheriff Mike Evans, Sergeant Brian K. Bowen,[1] and Deputy Sheriff Chris N. Fox (hereinafter the Calvert County Defendants).  Doc. No. 14.  The second Motion is by Defendants the State of Maryland, Maryland State Police, Trooper First Class Adam J. Merkelson,[2] and Lieutenant Randolph L. Stephens[3] (hereinafter the Maryland Defendants).  Doc. No. 28.  Also pending is Plaintiffs' Motion for an entry of default as to the Maryland Defendants and Defendant Trooper William Costello,[4] Doc. No. 26, and Plaintiffs' Motion for Settlement Conference, Doc. No. 30.  The Court has reviewed the motion papers and concludes that no hearing is necessary.  Loc. R. 105.6 (D. Md. 2011).  For the reasons articulated below, the Court will GRANT the Defendants' Motions to Dismiss or, in the Alternative, for Summary Judgment and will DENY Plaintiffs' Motions for entry of default and for a settlement conference.

---

[1] Plaintiffs identify Defendant Bowen as "Deputy Sheriff E. Bowen" in their pleadings.
[2] Plaintiffs identify Defendant Merkelson as "Sgt. (MSP) Merkelson" in their pleadings.
[3] Plaintiffs identify Defendant Stephens as "Lieutenant Randy L. Stephens" in their pleadings.
[4] Plaintiffs identify Defendant Costello as "Corporal Costella" in their pleadings.

I.        **FACTUAL AND PROCEDURAL BACKGROUND**

This case concerns a July 12, 2011 encounter between Plaintiffs and police officers at

Plaintiffs' home in Prince Frederick, Maryland and Plaintiffs' subsequent attempts to obtain a

copy of the July 12, 2011 incident report.  The parties' versions of events largely coincide, but

the Court will briefly outline their respective allegations and averments in turn.

A.        Defendants' Averments

The following is based on the affidavits of Defendants Trooper Merkelson, Sergeant

Bowen, Deputy Sheriff Fox, and Lieutenant Stephens.  *See* Bowen Aff., Doc. No. 14-2; Fox Aff.,

Doc. No. 14-3; Merkelson Aff., Doc. No. 28-3; Stephens Aff., Doc. No. 28-5.  Early in the

morning on July 12, 2011, the Calvert County Control Center broadcasted a call for service

advising that there was an allegation of a domestic disturbance at 1312 or 1314 Sark Court in

Prince Frederick.  Troopers Costello and Merkelson were the first officers on the scene, but they

were unable to locate a 1314 Sark Court.  Trooper Merkelson radioed to dispatch that they could

not locate that address.   Sergeant Bowen and Deputy Sheriff Fox were also dispatched to the

scene at 12:43 a.m. and arrived soon after Troopers Merkelson and Costello.

Trooper Costello knocked on the door of 1312 Sark Court and an individual later

identified as Plaintiff Harold Hodge opened the door.  Mr. Hodge only opened the door a few

inches and appeared agitated.  Trooper Costello told Mr. Hodge that the officers were responding

to a domestic disturbance call, and Mr. Hodge told the officers that he did not hear anything, that

no disturbance occurred inside his home, and that he was fine.  Mr. Hodge then closed the door

on Trooper Costello.

The officers radioed the Control Center to advise that there was no 1314 address and that

the only residence in the vicinity with the lights on was 1312.  The Control Center informed the

officers that the correct address was 1312 Sark Court.  The four officers approached the Hodges'

door and Trooper Merkelson knocked again.  Merkelson identified himself and told Mr. Hodge

that the officers were investigating a report of a domestic disturbance.  The officers aver that Mr.

Hodge was again irritated and agitated by their presence and that he became argumentative.

Trooper Merkelson asked Mr. Hodge whether an argument had occurred at his residence,

and Mr. Hodge replied in the negative.  Mr. Hodge refused to let Merkelson in the home and told

the officers they were violating his rights.  Trooper Merkelson advised Mr. Hodge that he needed

to speak with the other individuals at the residence—his wife and two daughters—to verify that

they were okay.  Merkelson prevented the door from closing by placing his foot in the doorway.

Merkelson explained to Mr. Hodge that he was not entering the home but simply needed to

verify the wellbeing of its residents.  Trooper Merkelson avers that at no time did he or Costello

cross or attempt to cross the threshold of the door and enter Plaintiffs' home, and at no time did

he physically leap out, yell or assault Mr. Hodge.  The officers then spoke with Chante' Hodge

and the Hodges' daughters and verified that they were safe and not involved in a domestic

dispute.  Mr. Hodge remained argumentative throughout the encounter.

Following the encounter with the Hodges, Troopers Merkelson and Costello went next

door to 1316 Sark Court and made contact with Colbert Jones and Vanity Savoy.  The officers

verified that no disturbance occurred at the Hodges' residence, but that Jones and Savoy had a

verbal argument earlier that morning.

Lieutenant Stephens avers that on August 19, 2011, Plaintiffs came to the Prince

Frederick Barrack and requested a copy of the July 12, 2011 police report.  Stephens explained

that the records were kept at the barrack, but that there was a process for requesting the record

and that a written request would have to be submitted.  At that time, Stephens believed that

Plaintiffs were seeking a copy of a criminal investigative report.  On August 31, 2011, Stephens received a letter from Plaintiffs which cited the Freedom of Information Act and requested a copy of the July 12, 2011 incident report.  On September 1, 2011, Stephens provided the Hodges with a redacted copy of the incident report and waived the report fee.

      B.      <u>Plaintiffs' Allegations and Averments</u>

On the morning of July 12, 2011, Mr. Hodge was sitting in the first floor of his home at 1312 Sark Court listening to gospel music on his computer.  Chante' Hodge was sleeping upstairs, and Plaintiffs' minor daughters Beersheva Hodge (age 13) and Bathsheba Hodge (age 15) were also upstairs in their beds.

At about 12:50 a.m., Mr. Hodge heard sounds of walking and what sounded like police radios outside the home, following by a few knocks at the front door.  Mr. Hodge got up from his computer, located about three feet from the front door, and opened the front door about fifteen to twenty inches to meet Defendant Trooper William Costello of the Maryland State Police. Trooper Costello asked Mr. Hodge where town home number 1314 was located and whether Mr. Hodge had heard any yelling or screaming.  Mr. Hodge responded that he did not know about unit 1314 and had not heard any yelling or screaming.  Trooper Costello then asked Mr. Hodge whether everything was okay in his home.  Mr. Hodge responded, "did you not ask for house #1314," and told Costello that everything was fine in his home.  Costello told Mr. Hodge to have a good night, at which time Mr. Hodge closed the door and returned to his music.

About three minutes later, the Plaintiffs heard three or four extremely loud bangs on their front door.  The individual knocking did not verbally identify himself, and Mr. Hodge fearfully opened the door only five or six inches where he was met by Defendant Trooper Adam J. Merkelson of the Maryland State Police.  Trooper Merkelson asked Mr. Hodge to come outside,

and Mr. Hodge responded in a calm but firm tone that he could not.  Merkelson then asked Mr. Hodge if he could enter the home.  Mr. Hodge responded that the officer could not enter his home without a warrant.  Trooper Merkelson stated that he did not need a warrant, to which Mr. Hodge said "you do need a warrant because I already told the other officer that we live not [sic] at house #1314."

Trooper Merkelson responded that he was doing an investigation into a domestic dispute and provided his name to Mr. Hodge.  It was at about this moment that Merkelson put his foot in the doorway "across the threshold" into Plaintiffs' home to prevent Mr. Hodge from closing the door.  Mr. Hodge told Merkelson in a peaceful but authoritative manner that he had crossed the threshold and was therefore in violation of the law and his rights under the Fourth Amendment.  Trooper Merkelson refused to move his foot.

Merkelson then asked Mr. Hodge his name and who else was in the home.  Mr. Hodge, "not believing he was free to terminate the intrusion of being seiz[ed]," told Merkelson that his wife and daughters were upstairs asleep in bed.  Trooper Merkelson demanded to speak with Mrs. Hodge, to which Mr. Hodge reiterated that the officer was in violation of his rights and needed a warrant.  Merkelson, now with his foot and body "halfway into" Plaintiffs' home, then became "louder and belligerent" and yelled and leaped toward Mr. Hodge and told him repeatedly to "get your wife."  At this point, Mr. Hodge noticed that Defendants Deputy Sheriff Chris N. Fox and Sergeant Brian K. Bowen of the Calvert County Sheriff's Office were "right behind" Trooper Merkelson and "moving forward with him as bees on honey."  Mr. Hodge alleges that he "was assaulted and fear [sic] he was going to be attacked and battered without an [sic] doubt if he had not started to get his wife."

5

As Mr. Hodge turned to walk upstairs to call his wife from bed, he saw that Trooper Merkelson was pushing Plaintiffs' door open at a ninety-degree angle, had his foot, leg, and arms "completely across the . . . threshold," and was looking around the home.  Mr. Hodge again told Trooper Merkelson that he was in violation of his rights, to which Merkelson "became more uncooperative and belligerent" and yelled again for Mr. Hodge to get his wife.  Mr. Hodge then called for his wife to come downstairs "out of fear of being attacked."  Mrs. Hodge had already woken up due to the yelling, and she told Mr. Hodge she was coming downstairs.  Plaintiffs' daughters remained upstairs "scared and frightened to death."

When Mrs. Hodge came downstairs, Trooper Merkelson asked her if she was okay, and Mrs. Hodge responded that she was fine.  Merkelson then asked Plaintiffs if he could speak with their daughters.  Plaintiffs refused given that they were minors and because Merkelson lacked probable cause.  Trooper Merkelson then demanded that the Plaintiffs get their daughters out of bed for questioning.  Plaintiffs, "out of fear and great humiliation," called their daughters to come downstairs, and the officers asked their daughters for their names, ages, and whether they were okay.  Both girls responded that they were fine.

Trooper Merkelson left his ID and badge number with Plaintiffs and told Mr. Hodge "out of sarcasm" that he could contact his superior officer in Prince Frederick or Leonardtown. Plaintiffs allege that when Mr. Hodge first answered the door, Merkelson had refused to provide his badge number until after his investigation was over.

Plaintiffs claim that on September 19, 2011,[5] they went to the Maryland State Police office in Prince Frederick to obtain a copy of the July 12, 2011 incident report.  Plaintiffs were told by Defendant Lieutenant Randolph L. Stephens of the Maryland State Police that they had to

---

[5] Lieutenant Stephens avers that this meeting occurred on August 19, 2011.  Based on Stephens' September 1 letter to the Hodges which enclosed a copy of the incident report, it appears that his timeline is correct. *See* Doc. No. 28-5.

"send off for a copy" of the report.  Plaintiffs allege that Stephens "wantonly refused" to give them a copy despite the availability of the incident report in the office and despite Plaintiffs' willingness to pay for a copy.

Mr. Hodge's affidavit in opposition to the Calvert County Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, is consistent with Plaintiffs' Complaint in all material respects.  *See* Doc. No. 25-3.  Mr. Hodge avers that Trooper Merkelson used a "hostile" tone with him and had a "hostile and belligerent demeanor" during the incident.  He also claims that Merkelson leaped toward him and yelled at him to get his wife, and that Deputy Sheriff Fox and Sergeant Bowen were moving toward the entry of his home "as if they could not wait to get in like bumble bees."  Mr. Hodge states that at the end of the incident, Merkelson told him it was a misunderstanding, but did not apologize.

Mr. Hodge's affidavit also contains details regarding the circumstances that led to the encounter at Plaintiffs' home.  First, he avers that the officers never told Mr. Hodge that they were aware that the 911 caller had identified Vanity Savoy and Colbert Jones as being involved in the alleged domestic disturbance.  Mr. Hodge alleges that these officers breached protocol and operated outside the scope of their duties by not asking Plaintiffs for their names and by failing to tell Plaintiffs that they were looking for Ms. Savoy and Mr. Jones.  Mr. Hodge further alleges that despite Ms. Savoy and Mr. Jones living less than 15 feet from Plaintiffs' home, the police officers did not make contact with them prior to entering Plaintiffs' home.

C.   <u>Procedural History</u>

Plaintiffs brought suit on July 3, 2012 and asserted the following causes of action against Defendants: (1) claims under 42 U.S.C. § 1983; (2) Fourth Amendment violations; (3) Fifth Amendment Violations; (4) Fourteenth Amendment violations; (5) Freedom of Information Act

violations; (6) violations of 18 U.S.C. § 3109 and 18 U.S.C. § 241; (7) failure to intervene; (8) false arrest and false imprisonment; (9) invasion of privacy; (10) intentional infliction of emotional distress; (11) malicious deceit; (12) racial discrimination and hate crimes; and (13) pain, suffering, and humiliation.  Plaintiffs seek $1,375,000.00 in compensatory and punitive damages from each Defendant.

All Defendants have moved to dismiss Plaintiffs' claims except for Trooper Costello and Sergeant Beach of the Maryland State Police.  The record indicates that the U.S. Marshals effectuated service on Trooper Costello on August 16, 2012.  Doc. No. 6.  Costello did not answer, and Plaintiffs moved for default judgment as to Costello and the Maryland Defendants on December 7, 2012.  Doc. No. 26.  The Maryland Defendants assert that service was not accepted on behalf of Costello because he is currently deployed in military service.  Doc. No. 28-1 at 3; Doc. No. 29 at 2.

The record also indicates that Defendant Sergeant Beach was served on August 16, 2012, Doc. No. 6, but has not answered the Complaint.  The Office of the Attorney General of Maryland filed a correspondence in this Court stating that it would not accept service on behalf of Sergeant Beach.  Doc. No. 7.  The correspondence states that there is no Sergeant Beach with the Maryland State Police, but there is a Sergeant Sheila M. Breck.  Doc. No. 7, at 1 n.1. Plaintiffs indicated in their service of process form for Beach that they believed "the correct name is Sgt. Breck (female)," and the certified mail receipt indicates that the complaint and summons were served on "Sgt. Beach or Sgt. Breck."  Doc. No. 6, at 5–6.

All pending motions in this matter are now ripe for the Court's consideration.[6]

---

[6] The Court notes that Plaintiffs did not timely respond to the Maryland Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, and Defendants did not timely respond to Plaintiffs' Motion for a Settlement Conference.

## II.     STANDARD OF REVIEW

The purpose of a motion to dismiss under Rule 12(b)(6) is "to test the sufficiency of [the] complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  Except in certain specified cases, the complaint need only satisfy Rule 8(a) of the Federal Rules of Civil Procedure, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In resolving a motion to dismiss, the Court should proceed in two steps.  First, the Court should determine which allegations in the Complaint are factual allegations entitled to deference, and which are mere legal conclusions that receive no deference.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In its determination, the Court must "accept the well-pleaded allegations of the complaint as true," *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and "must construe factual allegations in the light most favorable to the plaintiff," *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999).  The Court should not, however, accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), "legal conclusion[s] couched as . . . factual allegation[s]," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).  "Factual allegations must be

enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). In ruling on a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Okoli v. City of Balt.*, 648 F.3d 216, 231 (4th Cir. 2011) (quoting *Anderson*, 477 U.S. at 255).

To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact presents a genuine issue "if, after reviewing the record as a whole . . . a reasonable jury could return a verdict for [the non-moving party]." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (citing *Anderson*, 477 U.S. at 248). Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his favor, a nonmoving party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

**III.    MARYLAND DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

    A.    <u>Plaintiffs' Constitutional Claims</u>

As a preliminary matter, to the extent that Plaintiffs assert` claims directly under the U.S. Constitution, such claims must be dismissed.  In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court recognized "an implied private action for damages against *federal officers* alleged to have violated a citizen's constitutional rights."  *Iqbal*, 556 U.S. at 675 (emphasis added) (citations omitted).  Where *Bivens* applies, the implied cause of action is the "federal analog" to suits brought against state officials under 42 U.S.C. § 1983.  *Id.* (citations omitted).  In this suit, all Defendants are state actors, not federal actors, and Plaintiffs' constitutional claims will therefore be analyzed under § 1983.

    B.    <u>Claims against the State of Maryland and Maryland State Police</u>

The State of Maryland is not a proper Defendant in this case because it has not waived its sovereign immunity from suit in this Court.  *See, e.g.*, *Hans v. Louisiana*, 134 U.S. 1 (1890); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99–101 (1984).  For the same reason, the Maryland State Police is not a proper Defendant in this action.  *Bugg v. Md. Transp. Auth.*, 358 A.2d 562, 569 (Md. Ct. Spec. App. 1976 ) ("[A]n agency of the State . . . enjoys the same sovereign immunity as does the State for the reason that an agency of the State is but the alter ego of the State itself.").  The Court will therefore dismiss these Defendants.[7]

---

[7] There are additional grounds for dismissing Plaintiffs' constitutional claims against the State of Maryland and the Maryland State Police.  First, the State is not a "person" that can be subject to suit under § 1983.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  Second, Plaintiffs cannot hold the State of Maryland or the Maryland State Police liable for the alleged actions of Trooper Merkelson and Lieutenant Stephens, as vicarious liability and respondeat superior do not attach under § 1983.  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

C.      Claims against Lieutenant Stephens and Trooper Merkelson in their Official
        Capacities

"Official capacity suits generally represent but another way of pleading an action against

the entity of which the officer is an agent, . . . and damages may be awarded against a defendant

in his official capacity only if they would be recoverable against the governmental entity itself."

*Hughes v. Blankenship*, 672 F.2d 403, 406 (4th Cir. 1982) (citations omitted); *see also Revene*,

882 F.2d at 874.  For the reasons discussed above, Defendants cannot recover from the State of

Maryland pursuant to § 1983.  Furthermore, the Supreme Court has unequivocally held that

"neither a State nor its officials acting in their official capacities are 'persons' under § 1983."

*Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  Accordingly, the Court will

dismiss Plaintiffs' claims against Lieutenant Stephens and Trooper Merkelson in their official

capacities.

D.      Claims against Lieutenant Stephens in his Individual Capacity

Lieutenant Stephens was not present for the July 12, 2011 incident at Plaintiffs' home,

and his only role in the Complaint is that he allegedly refused to provide a copy of the July 12,

2011 incident report to Plaintiffs.  Therefore, the only possible claim Plaintiffs could have

against Lieutenant Stephens is for violating the Freedom of Information Act (FOIA), 5 U.S.C.

§ 552(a).  Plaintiffs complain that Stephens "wantonly refused" to provide Plaintiffs a copy of

the report during their initial request on August 19, 2011.  Doc. No. 1 ¶ 59.  Plaintiffs' claim fails

for two reasons.  First, FOIA requires federal agencies to make certain information available to

the public, but neither Lieutenant Stephens nor any other Defendant is a federal agency.  Second,

it is undisputed that Stephens provided Plaintiffs with a copy of the incident report within two

weeks of their initial request.  *See* Stephens Aff., Doc. No. 28-5.  The Court therefore fails to see

how Plaintiffs were harmed and how Stephens or any other Defendant violated Plaintiffs' right

of access to government records.  The Court will therefore dismiss Plaintiffs' claims against

Lieutenant Stephens and other Defendants relating to the alleged refusal to provide a copy of the

July 12, 2011 incident report.

      E.      Claims against Trooper Merkelson in his Individual Capacity

          1.      Federal Claims

Plaintiffs allege that Defendants deprived them of their rights under the Fourth, Fifth, and

Fourteenth Amendments.  Although Plaintiffs assert § 1983 claims against all Defendants, the

inquiry begins with the claims against Trooper Merkelson because he was the primary player in

the July 12, 2011 encounter with Plaintiffs.

"The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a

right 'secured by the Constitution and laws'" of the United States.  *Baker v. McCollan*, 443 U.S.

137, 140 (1979) (quoting 42 U.S.C. § 1983).  "In order for an individual to be liable under

Section 1983, it must be affirmatively shown that the official acted personally in the deprivation

of the plaintiff's rights."  *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (internal

quotations omitted).  Defendants "must have personal knowledge of and involvement in the

alleged deprivation of [a plaintiff's] rights in order to be liable."  *Id.*

"[T]he underlying command of the Fourth Amendment is always that searches and

seizures be reasonable."  *Wilson v. Arkansas*, 514 U.S. 927, 931 (1995) (quoting *New Jersey v.*

*T.L.O.*, 469 U.S. 325, 337 (1985)).  A search occurs for purposes of the Fourth Amendment

when the government invades an individual's reasonable expectation of privacy.  *See Smith v.*

*Maryland*, 442 U.S. 735, 739–40 (1979).  The Fourth Amendment inquiry embraces two

questions: "[t]he first is whether the individual, by his conduct, has exhibited an actual

(subjective) expectation of privacy," and the second is "whether the individual's subjective

expectation of privacy is one that society is prepared to recognize as reasonable." *Id.* at 740

(quoting *Katz v. United States*, 389 U.S. 347, 361 (1967)) (internal quotation marks omitted).

"A seizure implicating the Fourth Amendment does not occur simply because a police

officer approaches an individual and asks a few questions. . . . Rather, such a seizure occurs

when a police officer terminates or restrains a [person's] freedom of movement and, in view of

the totality of the circumstances surrounding the stop, a reasonable person would not feel free to

leave or otherwise terminate the encounter." *United States v. Watkins*, 378 Fed. App'x 328, 329

(4th Cir. 2010).

A "search" without a warrant is per se unreasonable unless it falls within one of the

"well-delineated exceptions" to the warrant requirement. *United States v. Smith*, 396 F.3d 579,

583 (4th Cir. 2005) (quoting *Katz*, 389 U.S. at 357).  One such exception is where an officer

"seizes" an individual to conduct a limited investigatory detention, a curtailment of liberty that

"must be supported at least by a reasonable and articulable suspicion that the person seized is

engaged in criminal activity." *Reid v. Georgia*, 448 U.S. 438, 440 (1980).  Courts must look to

the "totality of the circumstances in determining whether the officer had a particularized and

objective basis for suspecting criminal activity." *United States v. Foster*, 634 F.3d 243, 246 (4th

Cir. 2011).

Defendants argue that they are entitled to judgment as a matter of law on Plaintiffs'

Fourth Amendment claims because no search was conducted and no seizure was made.  Viewing

the facts in a light most favorable to Plaintiffs, however, the Court concludes that the Fourth

Amendment was implicated by Trooper Merkelson's conduct.  Although Mr. Hodge voluntarily

opened the door, Merkelson placed part of his body in the doorway, thereby preventing Mr.

Hodge from closing the door.  Doc. No. 1 ¶¶ 25, 27.[8]  Accordingly to Plaintiffs, Merkelson also

leaped toward Mr. Hodge and repeatedly yelled in a hostile tone that he get his wife.  *Id.* ¶ 31.

Given this show of authority, it was reasonable for Mr. Hodge to believe that he was not free to

terminate the encounter with Trooper Merkelson.

 The Court also concludes, however, that given the circumstances surrounding the

encounter with Mr. Hodge, Trooper Merkelson's conduct was reasonable and he did not deprive

Plaintiffs of their Fourth Amendment rights.  The following facts are not disputed: (1) Trooper

Merkelson and the other individual Defendants received a call to investigate an alleged domestic

disturbance at either 1312 or 1314 Sark Court; (2) the only address the officers were able to

locate was 1312 Sark Court, the Hodges' residence; (3) the lights were on in 1312 Sark Court,

and there were no other residences in the immediate vicinity with lights on; (4) the Control

Center subsequently informed the officers that the reported disturbance was at 1312 Sark Court;

(5) the officers knocked on the Hodges' residence and Mr. Hodge voluntarily opened the front

door, first to Trooper Costello, and then to Trooper Merkelson; and (6) when the officers spoke

with Mr. Hodge, they became aware that his wife and children were in the home.  *See, e.g.*,

Bowen Aff., Doc. No. 14-2; Fox Aff., Doc. No. 14-2; Merkelson Aff., Doc. No. 28-3.

 Given these circumstances, it was reasonable for Trooper Merkelson to ensure that Mrs.

Hodge and the children were safe.  His investigation was limited.  Although he blocked the

doorway with his body, he did not enter the home, and there is no allegation that he made

physical contact with Plaintiffs.  Although Plaintiffs assert that Trooper Merkelson leaped

toward Mr. Hodge and yelled in a hostile tone, such conduct, without more, does not give rise to

a deprivation of Plaintiffs' Fourth Amendment rights.

---

[8] Defendants Sergeant Bowen and Deputy Sheriff Fox acknowledge that Merkelson placed his foot in the doorway to prevent Mr. Hodge from closing the door.  Bowen Aff., Doc. No. 14-2 ¶ 5; Fox Aff., Doc. No. 14-3 ¶ 4.

Plaintiffs also complain that the officers should have known that they were looking for the home of Ms. Savoy and Mr. Jones when they were conducting their investigation, and that they should have asked Mr. Hodge whether Savoy or Jones were at the residence.  The Service Report for the 911 call indicates that the caller provided the names of Ms. Savoy and Mr. Jones. Doc. No. 22-3.  The Maryland Defendants also acknowledge in their Motion that following the initial contact with Mr. Hodge, the dispatcher informed officers that he had a Ms. Savoy on the line, that the female involved in the dispute was Vanity Savoy, and that the officers should again knock on 1312 Sark Court.  Doc. No. 28-1 at 3–4.  Even assuming that the officers were personally aware that a Vanity Savoy was likely involved in the reported domestic disturbance, it was reasonable given the totality of the circumstances for them to investigate the Hodges' residence and ensure the safety of the individuals inside.  Trooper Merkelson is therefore entitled to judgment as a matter of law on Plaintiffs' Fourth Amendment claims.[9]

Plaintiffs' claims under the Fourteenth Amendment are similarly without merit.  The Due Process Clause of the Fourteenth Amendment guarantees that no State shall "deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV § 1. The Complaint does not state a plausible procedural due process violation.  And to the extent Plaintiffs claim that Trooper Merkelson deprived them of their substantive due process rights, they have also failed to state a claim. "[S]ubstantive due process prevents the government from engaging in conduct that shocks the conscience, . . . or interferes with rights implicit in the concept of ordered liberty."  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (quoting

---

[9] Plaintiffs also assert that Trooper Merkelson told Sergeant Bowen and Deputy Sheriff Fox that Mr. Hodge had daughters, not sons, without Mr. Hodge having first provided this information. Doc. No. 25-3 ¶ 10.  Plaintiffs imply from this exchange that Defendants knowingly targeted the Hodges with harassment following prior disputes and litigation between the Hodges and Calvert County schools and police officers.  Doc. No. 25-3 ¶ 10.  There is no evidence in the record to support the Hodges' speculative allegations, and regardless, these allegations are not material to the Court's Fourth Amendment analysis.

*United States v. Salerno*, 481 U.S. 739, 746 (1987)) (internal quotation marks omitted).  Even accepting as true the allegations in the Complaint, Trooper Merkelson's conduct did not shock the conscience.

The Complaint also states a claim for "racial discrimination" against Trooper Merkelson and other Defendants.  The Complaint states that Defendants "have never illegally cross 'white' people threshold in (Calvert County) and go into their home and leap out at them in a threaten way (clearly displaying physically) or saying we going to attack if you do not obey."  Doc. No. 1 ¶ 64.  Furthermore, in their Opposition brief, Plaintiffs raise new allegations that the Calvert County Defendants caused the drowning death of an African-American male, covered up his death, tampered with Mr. Hodge's car, and threatened Mr. Hodge by telephone. Doc. No. 25-2 at 2, 16.  Plaintiffs have not alleged any suspect classifications, and their unsupported and speculative allegations against Defendants do not support a claim under the Equal Protection Clause of the Fourteenth Amendment.  Accordingly, the Court will dismiss Plaintiffs' Fourteenth Amendment claims.

Finally, Plaintiffs claim that Defendants deprived them of their rights under the Fifth Amendment, but the claim is based on the same conduct underlying Plaintiffs' Fourth Amendment claims.  *See* Doc. No. 1 ¶ 65.  As mentioned above, Plaintiffs' Complaint raises no plausible procedural or substantive due process violations, and no other Fifth Amendment provisions are implicated by their allegations.  Accordingly, the Court will dismiss Plaintiffs' Fifth Amendment claims.[10]

---

[10] Although not included as a separate Count against Defendants, Plaintiffs also allege in their Complaint that Defendants violated Articles 24 and 26 of the Declaration of Rights of the Maryland Constitution.  Doc. No. 1 ¶ 7. The Court of Appeals of Maryland has equated Articles 24 and 26 with the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution.  *Widgeon v. E. Shore Hosp. Ctr.*, 479 A.2d 921, 927 (Md. 1984). Accordingly, to the extent that Plaintiffs sought to state a claim pursuant to those provisions, Defendants are entitled to judgment as a matter of law.

Even if the Court concluded that Plaintiffs raised plausible claims under the Fourth, Fifth, or Fourteenth Amendments or that Defendants had violated Plaintiffs' constitutional rights, Trooper Merkelson would still be entitled to judgment as a matter of law based on the doctrine of qualified immunity.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Clearly established for purposes of qualified immunity means that a reasonable official would understand that what he is doing violates the right." *Wilson v. Layne*, 526 U.S. 603, 614–15 (1999) (citations omitted) (internal quotation marks omitted).  "Once the defendant raises a qualified immunity defense, the plaintiff carries the burden of showing that the defendant's alleged conduct violated the law and that such law was clearly established when the alleged violation occurred." *Bryant v. Muth*, 994 F.2d 1082, 1086 (4th Cir. 1993).

Plaintiffs do not cite and the Court is unaware of any cases that would overcome Trooper Merkelson's qualified immunity defense.  Even if Trooper Merkelson yelled in a hostile tone and leaped toward Mr. Hodge, as Plaintiffs allege, he never got beyond the doorway, never entered the Plaintiffs' home, made no physical contact with Plaintiffs or their daughters, and the confrontation was over within a matter of minutes.  Indeed, Trooper Merkelson's conduct did not violate clearly established law because he had an objectively reasonable basis for believing that the individuals in the home were under imminent threat of harm.  *See, e.g.*, *Brigham City v. Stuart*, 547 U.S. 398, 400, 403–04 (2006).  In *Georgia v. Randolph*, the Supreme Court indicated that police officers are justified in entering a dwelling to protect potential victims of domestic abuse:

> No question has been raised, or reasonably could be, about the authority of the
> police to enter a dwelling to protect a resident from domestic violence; so long as
> they have good reason to believe such a threat exists, it would be silly to suggest
> that the police would commit a tort by entering [the dwelling] . . . to determine
> whether violence (or threat of violence) has just occurred or is about to (or soon
> will) occur, however much a spouse or other co-tenant objected.

547 U.S. 103, 118 (2006).  Thus, even if Plaintiffs could show that their rights were violated,

Trooper Merkelson would be entitled to judgment as a matter of law on his qualified immunity

defense.

Plaintiffs also assert claims against Trooper Merkelson and the other Defendants pursuant

to two federal criminal statutes: 18 U.S.C. § 3109 and 18 U.S.C. § 241.  Section 3109, which is

applicable to suppression issues in federal criminal prosecutions, permits police officers to break

open a window or door of a home to execute a search warrant when they had been refused

admittance or when necessary to liberate themselves or a person aiding them in execution of the

warrant.  Section 241 prohibits conspiring to injure, oppress, threaten, or intimidate an individual

in the free exercise of the rights secured by the Constitution of the United States.  Defendants'

conduct as alleged in Plaintiffs' Complaint fail to implicate these criminal statutes.  Furthermore,

these statutes do not create a private right of action or any basis for civil liability.  *See, e.g.*,

*Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (holding that 18 U.S.C. § 241 provides no

basis for civil liability).  Accordingly, Plaintiffs' claims under 18 U.S.C. § 3109 and 18 U.S.C.

§ 241 will be dismissed.  For the same reason, Plaintiffs' claims that Defendants committed

"hate crimes"—whether based in federal law or state law—will be dismissed.

2.     State Law Claims

Plaintiffs allege a litany of state law tort claims against Trooper Merkelson and other

Defendants, beginning with a claim of false arrest and false imprisonment.  The elements of false

arrest and false imprisonment are identical: "(1) the deprivation of the liberty of another; (2)

19

without consent; and (3) without legal justification." *Heron v. Strader*, 761 A.2d 56, 59 (Md. 2000).  Plaintiffs have failed to state a claim of false arrest or false imprisonment against Trooper Merkelson or any other Defendant because they do not allege that they were ever arrested or imprisoned during or because of the July 12, 2011 incident.  Furthermore, as discussed in the context of Plaintiff's Fourth Amendment claims, Trooper Merkelson was legally justified in ensuring that Mrs. Hodge and the Plaintiffs' children were safe given the circumstances.

Plaintiffs next allege that Trooper Merkelson invaded Plaintiffs' privacy by placing his foot and arm in the door of their home.  Maryland has defined the tort of intrusion upon seclusion as "[t]he intentional intrusion upon the solitude or seclusion of another or his private affairs or concerns that would be highly offensive to a reasonable person." *Furman v. Sheppard*, 744 A.2d 583, 585 (Md. Ct. Spec. App. 2000) (quoting *Pemberton v. Bethlehem Steel Corp.*, 502 A.2d 1101, 1116 (Md. Ct. Spec. App. 1986)).  Plaintiffs have failed to state a claim for invasion of privacy because they acknowledge that Mr. Hodge voluntarily opened the door to Trooper Merkelson, thereby allowing him visual access to the home.  Furthermore, Trooper Merkelson's actions in verifying the welfare of Mrs. Hodge and the Plaintiffs' children would not be offensive to a reasonable person.

To prevail on a claim for intentional infliction of emotional distress (IIED), Plaintiffs must prove four elements: "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; [and] (4) The emotional distress must be severe." *Caldor, Inc. v. Bowden*, 625 A.2d 959, 963 (Md. 1993) (citations omitted).  Liability for this tort should be "imposed sparingly" and "its balm reserved for those wounds that are truly severe and incapable of healing themselves." *Id.* (citations omitted).  Satisfying the element of extreme and

outrageous conduct requires the conduct to be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Mitchell v. Balt. Sun Co.*, 883 A.2d 1008, 1024 (Md. Ct. Spec. App. 2005) (citations omitted). Furthermore, the emotional distress must be so severe that "no reasonable man could be expected to endure it. . . . One must be unable to function; one must be unable to tend to necessary matters." *Id.* (citations omitted) (internal quotation marks omitted).

Trooper Merkelson's conduct in this case cannot be described as extreme and outrageous. Even accepting Plaintiffs' allegation that Merkelson leaped toward Mr. Hodge and yelled at him, it was reasonable for the officer to verify the safety of those in the home, and the entire encounter lasted a matter of minutes. Furthermore, Plaintiffs claim that they are so distressed following this incident that they are considering purchasing firearms to protect their home, which would contradict their religious beliefs. Doc. No. 1 ¶ 62. This allegation does not rise to the level of severe emotional distress that is required to state an IIED claim under Maryland law.

Plaintiffs also state a claim for "malicious deceit" against Trooper Merkelson for failure to provide his name to Mr. Hodge[11] and for other conduct related to Plaintiffs' Fourth Amendment claims. *Id.* ¶ 66. The Court already disposed of Plaintiffs' Fourth Amendment claims, and was unable to find a Maryland case that recognized an independent tort of malicious deceit. Accordingly, the Court will dismiss Plaintiffs' malicious deceit claim. The Court also notes that one of the counts in Plaintiffs' Complaint—pain, suffering, and humiliation—does not in itself state a cognizable claim, but rather goes to Plaintiffs' damages. This Court will also dismiss this count.[12]

---

[11] This contradicts another section of the Complaint where Plaintiffs state that Merkelson did provide his name at or near the beginning of his encounter with Mr. Hodge. Doc. No. 1 ¶ 24.

[12] Because the Court finds that Plaintiffs have failed to state a claim on these tort claims, the Court does not need to address Trooper Merkelson's argument that he is entitled to statutory immunity under Maryland law.

As a final matter, the Court notes that it is unclear whether Plaintiffs intended to state a separate tort claim for assault against Trooper Merkelson for allegedly leaping toward Mr. Hodge during the July 12, 2011 encounter.  Although Plaintiffs did not include this as a separate count in their Complaint, they repeatedly state in their Complaint and opposition briefs to Defendants' pending motions that Merkelson committed assault.  "An assault is any unlawful attempt to cause a harmful or offensive contact with the person of another or to cause an apprehension of such a contact."  *Continental Cas. Co. v. Mirabile*, 449 A.2d 1176, 1183 (Md. Ct. Spec. App. 1982).  Under Maryland law, a plaintiff must establish two basic elements: (1) that he was threatened by a defendant who possessed the apparent ability to carry out the threat, and (2) that the defendant's actions must have raised in the plaintiff's mind an apprehension of imminent bodily harm.  *Lee v. Pfeifer*, 916 F. Supp. 501, 505–06 (D. Md. 1996).  "Although the first element is measured by a standard of reasonableness, the second element is measured by an entirely subjective standard."  *Id.* at 506.  Whether Trooper Merkelson leaped toward Mr. Hodge—an allegation denied by Merkelson—is material to Plaintiff's assault claim.  It is also disputed whether Trooper Merkelson acted with malice or gross negligence, the absence of which would entitle him to statutory immunity.  *See* MD. CODE, STATE GOV'T § 12-105; MD. CODE, CTS. & JUD. PROC. § 5-522(b).  Accordingly, the Court cannot grant judgment as a matter of law to Merkelson on Mr. Hodge's assault claim.

However, for the reasons stated herein, Defendants are entitled to dismissal or judgment as a matter of law on all of Plaintiffs' federal claims and the remainder of Plaintiffs' state law claims.  "[T]rial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished."  *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (citing 28 U.S.C. § 1367(c)(3)).  "Among the factors that inform this

discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Id.* (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). The Court does not believe that any of these factors weigh in favor of retaining jurisdiction over Mr. Hodge's assault claim. Accordingly, the Court will dismiss Plaintiffs' assault claim against Trooper Merkelson without prejudice.

## IV.   CALVERT COUNTY DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

### A.   Claims against Calvert County

"[I]t is when execution of a government's policy or custom, whether made by lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978). Plaintiffs' Complaint is devoid of any factual allegations that it was Calvert County's official policies or customs that led to their alleged injuries. Indeed, the Complaint is devoid of any specific factual allegations regarding Calvert County. Furthermore, as with the State of Maryland and the Maryland State Police, Plaintiffs cannot hold the County vicariously liable for the alleged constitutional deprivations by Sergeant Bowen and Deputy Sheriff Fox, as vicarious liability and respondeat superior do not attach under § 1983. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). The County is also immune from claims that seek to impose respondeat superior liability for the common law torts allegedly committed by its police officers. *Gray-Hopkins v. Prince George's Cnty.*, 309 F.3d 224, 234 (4th Cir. 2002) (citing *DiPino v. Davis*, 729 A.2d 354, 370–71 (Md. 1999)); *see also Rucker v. Harford Cnty.*, 558 A.2d 399, 407 (Md. 1989) ("[C]ounties and municipalities in Maryland are generally not liable under the doctrine of respondeat superior for the tortious acts of State officials or State

employees acting in the scope of their employment.").[13]  Accordingly, the Court will dismiss Plaintiffs' claims against Calvert County.

B.      Claims against Calvert County Sheriff's Office

Under Federal Rule of Civil Procedure 17(b), a plaintiff may bring suit against any entity capable of being sued.  Under Maryland law, a city or county police department is not such an entity.  *See, e.g.*, *Hines v. French*, 852 A.2d 1047, 1071 (Md. Ct. Spec. App. 2004) ("County police departments are agents of the State and should not be viewed as separate legal entities."); *Boyer v. State*, 594 A.2d 121, 128 n.9 (Md. 1991) ("[T]he 'Sheriff's Department' is not an entity capable of being sued."); *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 874 (4th Cir. 1989) ("The separate claim against the 'Office of Sheriff' was rightly dismissed on the basis that this 'office' is not a cognizable legal entity separate from the Sheriff in his official capacity and the county government of which this 'office' is simply an agency.").  Thus, Plaintiffs' claims against the Calvert County Sheriff's Office must be dismissed.

C.      Claims against Sheriff Mike Evans, Sergeant Bowen and Deputy Sheriff Fox in their Official Capacities

As discussed above in the context of the Maryland Defendants, official capacity suits are "another way of pleading an action against the entity of which the officer is an agent."  *Hughes v. Blankenship*, 672 F.2d 403, 406 (4th Cir. 1982) (citations omitted); *see also Revene*, 882 F.2d at 874.  For the same reasons Plaintiffs' claims against Calvert County must be dismissed, the Court will also dismiss their claims against the individuals Defendants in their official capacities.

---

[13] Even if the County was not immune, Plaintiffs have failed to present any evidence that they complied with the notice provisions of the Local Government Tort Claims Act, which requires a plaintiff to notify the local government or its employees of the claims against it within 180 days of the injury.  *See* MD. CODE, CTS. & JUD. PROC. § 5-304(b).  On this basis alone, Calvert County would be entitled to summary judgment on Plaintiffs' state law tort claims.

D.      Claims against Calvert County Sheriff Mike Evans in his Individual Capacity

As discussed above in reference to claims against the Maryland Defendants, "[i]n order for an individual to be liable under Section 1983, it must be affirmatively shown that the official acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (internal quotations omitted). Defendants "must have personal knowledge of and involvement in the alleged deprivation of [a plaintiff's] rights in order to be liable." *Id.* Although the Complaint lists Sheriff Evans in the caption, Plaintiff's pleadings are devoid of *any* specific, factual allegations regarding Sheriff Evans. The fact that Sheriff Evans may be the superior officer of Sergeant Bowen and Deputy Sheriff Fox is of no consequence because, as discussed above, respondeat superior and vicarious liability do not attach under § 1983. *Harris*, 489 U.S. at 385. The Complaint also fails to state a claim for imposing vicarious liability on Sheriff Evans for his subordinates' alleged state law violations. Accordingly, all claims against Sheriff Evans must be dismissed.

E.      Claims Against Sergeant Bowen and Deputy Sheriff Fox in their Individual Capacities

1.      Federal Claims and Failure to Intervene

As discussed above, Trooper Merkelson is entitled to judgment as a matter of law or dismissal of the constitutional claims brought against him pursuant to 42 U.S.C. § 1983. Regardless of the Court's findings as to Trooper Merkelson, Plaintiffs have failed to state any constitutional claims against Sergeant Bowen and Deputy Sheriff Fox.

Aside from being present with Trooper Merkelson outside Plaintiffs' home, the only specific allegation Plaintiffs raise against Bowen and Fox is that during Mr. Hodge's engagement with Trooper Merkelson, they were "right behind" Merkelson and "moving forward with him as bees on honey." Doc. No. 1 ¶ 33; *see also* Hodge Aff., Doc. No. 25-3 at 3–4 (saying that Fox

and Bowen were moving toward the entry of the home "as if they could not wait to get in like bumble bees."). Plaintiffs do not allege that Bowen or Fox ever leaped toward Hodge, entered the threshold of the home, or placed their bodies in the doorway. Plaintiffs' vague allegations that Bowen and Fox were moving toward the home is insufficient to state any constitutional deprivation under § 1983.

It appears that the primary basis for Plaintiffs' constitutional claims against Sergeant Bowen and Deputy Sheriff Fox is that they knew or should have known that Trooper Merkelson "was deliberately acting outside the scope of his duties with malice and ill will" and that they should have stopped Merkelson from leaping toward Mr. Hodge and placing his foot in the doorway. Doc. No. 25-2 at 2. This also appears to be the basis for the Complaint's "failure to intervene" claim, which alleges that Bowen and Fox "maliciously and willfully failed to stop" Merkelson from violating Plaintiffs' rights to be "free from illegal search and seizure and free from being assaulted." Doc. No. 1 ¶ 54.

The Fourth Circuit has recognized that police officers possess "an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers." *Randall v. Prince George's Cnty.*, 302 F.3d 188, 203 (4th Cir. 2002) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). An officer may be liable under § 1983 on a theory of bystander liability if he: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall*, 302 F.3d at 204 (footnotes omitted). The doctrine recognizes that bystander officers are only obliged to act "in certain limited situations." *Id.*

Plaintiffs have failed to state a plausible claim for bystander liability in this case. First, the Complaint plainly fails to satisfy the second element. The most objectionable conduct

26

alleged against Trooper Merkelson is that he leaped toward Mr. Hodge at one point during their conversation.  Even accepting that Merkelson did so, Plaintiffs cannot explain how Sergeant Bowen and Deputy Sheriff Fox had a reasonable opportunity to prevent the alleged harm. Second, for the reasons discussed above, Plaintiffs cannot plausibly claim that Bowen and Fox had specific knowledge that Merkelson was violating Mr. Hodge's constitutional rights.  Rather, Bowen and Fox were providing support to Trooper Merkelson on a domestic disturbance call to Plaintiffs' address.  It was therefore reasonable for them to back up Merkelson throughout his encounter with Mr. Hodge.  Accordingly, the Court will dismiss Plaintiffs' failure to intervene claims as well as their § 1983 bystander liability claims against Sergeant Bowen and Deputy Sheriff Fox.

     2.  <u>State Law Claims</u>

   For the same reasons that the Court will dismiss the state law tort claims against Trooper Merkelson, so too will it dismiss these claims against Sergeant Bowen and Deputy Sheriff Fox.[14] Alternatively, Bowen and Fox are entitled to judgment as a matter of law due to Plaintiffs' failure to comply with the Maryland Local Government Tort Claims Act (LGTCA).  Under the LGTCA, "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury."  MD. CODE, CTS. & JUD. PROC. § 5-304(b).  Courts in this district have recognized that under the LGTCA, "notice is a condition precedent to the right to maintain an action for damages, and compliance with the notice provision should be alleged in the complaint as a substantive element of the cause of action."  *Renn v. Bd. of Comm'rs of Charles Cnty.*, 352 F. Supp. 2d 599, 603 (D. Md. 2005).  Plaintiffs did not claim compliance with the LGTCA in

---

[14] Plaintiffs have not stated a plausible claim for assault against Bowen and Fox, so to the extent Plaintiffs intended to state such a claim, it will be dismissed with prejudice.

their Complaint. In response to the Calvert County Defendants' Motion, Plaintiffs claim to have complied with the LGTCA but attached no proof of their compliance despite having ample time to do so. *See* Doc. No. 25-2 at 13.

Finally, Plaintiffs' state law tort claims against Sergeant Bowen and Deputy Sheriff Fox must also be dismissed pursuant to the Maryland Tort Claims Act (MCTA), which provides that state personnel are immune for tort liability for conduct that is within the scope of their public duties and is made without malice or gross negligence. MD. CODE, STATE GOV'T § 12-105 (referring to MD. CODE, CTS & JUD. PROC. § 5-522(b). The MCTA provides immunity from suit to "state personnel," including deputy sheriffs of a county. MD. CODE, STATE GOV'T § 12-101(a)(6). The allegations regarding Bowen and Fox's conduct during the July 12, 2011 incident do not plausibly state a claim that they acted with malice or gross negligence. *See, e.g.*, *Lee v. Cline*, 863 A.2d 297, 311 (Md. 2004) ("Actual malice, in Maryland law, normally refers to conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud.") (citations omitted) (internal quotation marks omitted); *Barbre v. Pope*, 935 A.2d 699, 717 (Md. 2007) ("[G]ross negligence is an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them.") (citations omitted). For these reasons, the Court will dismiss Plaintiffs' state law tort claims against Sergeant Bowen and Deputy Sheriff Fox.

## V.     REMAINING CLAIMS AGAINST DEFENDANT COSTELLO

The Maryland Defendants have notified the Court that service of process was not accepted on behalf of Defendant Trooper William Costello because he is in active military service. Doc. No. 28-1 at 3; Doc. No. 29 at 2. Plaintiffs have not presented the Court with

evidence to the contrary with respect to Costello's status as a servicemember.  Regardless of

Trooper Costello's status, the Court believes that Plaintiffs have failed to state a plausible claim

for relief against Costello.  The only specific allegation against Costello is that he was the first

officer to make contact with Mr. Hodge, but it cannot seriously be argued that Costello violated

Plaintiffs' rights simply by knocking on their front door.  Furthermore, Costello cannot be liable

on a theory of bystander liability for the same reasoning that applies to Sergeant Bowen and

Deputy Sheriff Fox.  Finally, nothing in the Complaint plausibly gives rise to state law tort

liability on the part of Trooper Costello.  The Court is therefore inclined to dismiss Plaintiffs'

claims against Trooper Costello, but will give Plaintiffs fourteen days from the date of this

Memorandum Opinion and accompanying Order to show why these claims should not be

dismissed.[15]

## VI.      REMAINING CLAIMS AGAINST DEFENDANT SERGEANT BEACH

As discussed in the Procedural Background, there appears to be some confusion

regarding Defendant Sergeant Beach's role in this case.  Plaintiffs named "Sgt. Beach" in the

Complaint and attempted to serve "Sgt. Beach" or "Sgt. Breck."  The Maryland Defendants

notified the Court that there is no Sergeant Beach with the Maryland State Police, but there is a

Sergeant Breck.  The Complaint makes no mention of a Sergeant Breck, while the Plaintiffs'

only mention of a "Sgt. Beach" in these proceedings is its listing in the caption and in the

opening paragraph of the Complaint.  Doc. No. 1, ¶ 1.  However, Plaintiffs make no specific

factual allegations against a Sergeant Beach.  As with the claims against Costello, the Court is

inclined to dismiss the claims against Sergeant Beach or Sergeant Breck, but will give Plaintiffs

fourteen days to show why these claims should not be dismissed.

---

[15] Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the Court is authorized to dismiss Plaintiffs' *in forma pauperis*
Complaint at any time if it determines that the Complaint fails to state a claim upon which relief may be granted.

## VII.   PLAINTIFFS' OUTSTANDING MOTIONS

On December 7, 2012, Plaintiffs filed a Motion for the entry of default against the Maryland Defendants and Defendant Costello.  Doc. No. 26.  However, the Maryland Defendants never failed to plead or otherwise defend as required by Rule 55(a) of the Federal Rules of Civil Procedure.  *See* Doc. No. 29.  As for Costello, the Court does not believe that service of process was effectuated on this Defendant.  Accordingly, Plaintiffs' Motion for an entry of default as to these Defendants will be denied.

Finally, on January 3, 2013, Plaintiffs filed a Motion for Settlement Conference with Defendants on the condition that they "acknowledge the gravity of the circumstances that surround this case."  Doc. No. 30.  Because the Court cannot compel parties to engage in settlement discussions, Plaintiffs' Motion will be denied.

## VIII.   CONCLUSION

For the foregoing reasons, the Court will GRANT the Defendants' Motions to Dismiss or, in the Alternative, for Summary Judgment, and DENY Plaintiffs' Motion for entry of default and Motion for a Settlement Conference.  A separate Order will follow.


__ January 31, 2013 __                                          _____ /s/ _____
        Date                                          Alexander Williams, Jr.
                                                      UNITED STATES DISTRICT JUDGE